## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUSAN TAYLOR,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br><br>THE BANK OF FINCASTLE, GEORGE E. HOLT, III, CHARLES STEELE, GREGORY R. GERSACK, KIRTESH PATEL, JOHN W. RADER, JR., STEVEN W. SPICKARD, C. RAY SPRINKLE, and ROBERT C. WAGNER,<br><br><br>　　　　　　Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Susan Taylor ("Plaintiff") by and through her undersigned attorneys, brings this action on behalf of herself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Bank of Fincastle ("Fincastle" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Fincastle and the Defendants.

## SUMMARY OF THE ACTION

1.      This is an action brought by Plaintiff against Fincastle and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger between Fincastle, First National Corporation ("First National") and First Bank, a wholly-owned subsidiary of First National ("Proposed Transaction").

2.      On February 18, 2021, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with First National.  Pursuant to the terms of the Merger Agreement the Company's shareholders could elect, for each share of Fincastle common stock, to receive: (i) $3.30 in cash; (ii) 0.1649 shares of First National common stock; or (iii) a combination of stock and cash, subject to election and proration such that the aggregate consideration will consist of 80 percent First National stock and 20 percent cash (the "Merger Consideration").

3.      On April 23, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the joint filing of a materially incomplete and misleading registration statement with the SEC on Form S-4/A (the "Registration Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Fincastle and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Fincastle shareholders before the vote on the Proposed Transaction or, in the event the Proposed

Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.      This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, the owner of Fincastle shares.

9.      Defendant Fincastle is a Virginia state-chartered non-member bank with its principal executive offices located at 17 South Roanoke Street, Fincastle, Virginia 24090.  The Company's common stock trades on the OTC under the symbol "BFTL."

10.      Defendant George E. Holt, III ("Holt") is and has been the Chairman of the Board of Directors of Fincastle at all times during the relevant time period.

11.     Defendant Charles Steele ("Steele") is and has been the President, Chief Executive Officer ("CEO") and a director of Fincastle at all times during the relevant time period.

12.     Defendant Gregory R. Gersack ("Gersack") is and has been a director of Fincastle at all times during the relevant time period.

13.     Defendant Kirtesh Patel ("Patel") is and has been a director of Fincastle at all times during the relevant time period.

14.     Defendant John W. Rader, Jr. ("Rader") is and has been a director of Fincastle at all times during the relevant time period.

15.     Defendant Steven W. Spickard ("Spickard") is and has been a director of Fincastle at all times during the relevant time period.

16.     Defendant C. Ray Sprinkle ("Sprinkle") is and has been a director of Fincastle at all times during the relevant time period.

17.     Defendant Robert C. Wagner ("Wagner") is and has been a director of Fincastle at all times during the relevant time period.

18.     Defendants Holt, Steele, Gersack, Patel, Rader, Spickard, Sprinkle, and Wagner collectively referred to herein as the "Individual Defendants."

19.     The Individual Defendants, along with Defendant Fincastle, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

20.     Fincastle is a leading financial services provider in the Roanoke region since 1875, and offers a full range of banking, lending and investment products. Headquartered in

Fincastle, Virginia, the Bank has six full-service branches, 13 ATM locations, a 7 a.m. to 7 p.m. drive through location and offers online deposit account opening, online real-estate and consumer loan applications, online banking, mobile banking and 24/7 telephone banking. The Bank of Fincastle is a Member FDIC, Equal Housing Lender and Equal Opportunity Employer.

## The Company Announces the Proposed Transaction

21.     On February 18, 2021, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

STRASBURG, Va. and FINCASTLE, Va., Feb. 18, 2021 (GLOBE NEWSWIRE) -- First National Corporation (the "Company" or "First National") (NASDAQ: FXNC), the bank holding company of First Bank ("First Bank") and The Bank of Fincastle ("Fincastle") (OTCPK: BFTL) jointly announced today the signing of a definitive merger agreement.

Upon completion of the acquisition, the combined company is expected to have approximately $1.2 billion in assets, $868 million in loans, $1.0 billion in deposits and 20 branch offices across Virginia. First National expects the transaction to be approximately 10% accretive to earnings per share.

Commenting on the announcement, Scott Harvard, President and Chief Executive Officer of First National Corporation, said, "We are excited to be joining forces with another bank who has deep roots in their community, having begun operations in the Town of Fincastle in 1875. Together, our team of bankers will deliver unparalleled service to our customers and communities and continue to make those communities better places to live and work. With this combination, First Bank will extend its reach from the top of Virginia south down the I-81 corridor to Roanoke, ensuring our small and mid-sized Virginia markets continue to be served by an independent Virginia community bank."

First National will acquire Fincastle for a combination of stock and cash valued at approximately $3.09 per share for each share of Fincastle's common stock outstanding. Under the terms of the agreement, Fincastle shareholders could elect, for each share of Fincastle common stock, to receive 0.1649 shares of First National stock, or $3.30 in cash, or a combination of stock and cash, subject to election and proration such that the aggregate consideration will consist of 80 percent First National stock and 20 percent cash. Based on First National's closing stock price of $18.40 as of February 17, 2021, this equates to an aggregate deal value of approximately $31.6 million.

Founded in 1875, The Bank of Fincastle currently operates six banking locations in and around the Roanoke Metropolitan Statistical Area. As of December 31, 2020, Fincastle reported assets of $256 million, gross loans of $202 million and deposits of $224 million.

Scott Steele, President and Chief Executive Officer of Fincastle, stated, "I am enthusiastic about the opportunity we have to partner with First National in a transaction that we believe offers significant opportunities to our clients, communities, employees and shareholders. This partnership is an excellent opportunity to create value for both institutions."

The merger agreement has been unanimously approved by the boards of directors of each company. The transaction is expected to close in the third quarter of 2021, subject to approval of both companies' shareholders, regulatory approvals and other customary closing conditions.

First National and First Bank will appoint three Fincastle directors to join the existing eight legacy directors on each respective Board. Scott Steele, the President and Chief Executive Officer of Fincastle will join First Bank as the First Bank Regional President.

Piper Sandler & Co. served as financial advisor and Nelson Mullins Riley & Scarborough, LLP provided legal counsel to First National. Janney Montgomery Scott LLC served as financial advisor, RP Financial, LC served as fairness advisor, and Godfrey & Kahn, S.C. served as legal counsel to Fincastle.

## FALSE AND MISLEADING STATEMENTS
## AND/OR MATERIAL OMISSIONS IN THE REGISTRATION STATEMENT

22. On April 23, 2021, the Company authorized the filing of the Registration Statement with the SEC. The Registration Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

23. Defendants were obligated to carefully review the Registration Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding the Company's Financial Projections**

24.     The Registration Statement notes that the Board reviewed, "detailed financial projections for Fincastle, its projected asset growth over a five-year period, and the estimated future value of Fincastle common stock." In addition, RP Financial, LC ("RP") states that it relied upon "financial forecasts, projections and other forward-looking information estimated by Fincastle and First National" in performing its fairness opinion.

25.     However, the Registration Statement omits the Company's and First National's financial projections in their entirety.

26.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.   Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding RP's Financial Opinion**

27.     The Registration Statement contains the financial analyses and opinion of RP concerning the Proposed Transaction, but fails to provide material information concerning such.

28.     With respect to RP's *Comparable Transactions Analysis*, the Registration Statement fails to disclose the individual multiples and metrics for the transactions observed in RP's analysis.

29.     With respect to RP's *Control Premium Analysis*, the Registration Statement fails to disclose the individual multiples and metrics for each company observed in the analysis.

30.     With respect to RP's *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the financial projections used in the analysis; (ii) the terminal values; (iii) RP's basis for applying control terminal value multipliers of 18.0 to 22.0 times to year 5 earnings per share and 1.00 times to 1.40 times to year 5 tangible book value per share; and (iv) the inputs and assumptions underlying RP's use of the range of discount rates of 10% to 13%.

31.     With respect to the RP's *Pro Forma Impact Analysis*, the Registration Statement fails to disclose the inputs and assumptions underlying RP's estimate of the merger to be approximately 4.0% dilutive to First National's tangible book value per share.

32.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

33.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Background of the Transaction

34.     The Registration Statement fails to disclose information concerning the background of the transaction.

35.     The Registration Statement provides that in 2019, RP assisted the Board and the Company's management in evaluating Fincastle's strategic plan during a planning retreat, yet the Registration Statement does not disclose the fees received by RP for providing that service.

36.     The Registration Statement fails to disclose the amount of compensation Janney Montgomery Scott LLC's ("Janney") stands to receive in connection with its services as financial advisor, nor does it disclose whether Janney has performed past services for any parties to the Merger Agreement or their affiliates.

37.     The Registration Statement notes that Fincastle executed non-disclosure agreements with seven financial institutions. However, the Registration Statement fails to disclose whether those agreements contained standstill provisions, and if so, whether those standstill provisions contained a "don't ask don't waive" ("DADW") provisions.

38.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

**COUNT I**

**(Against All Defendants for Violations of Section 14(a)
of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

39.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection

of investors, to solicit or to permit the use of his name to solicit any Registration or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

41.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

42.     Defendants have issued the Registration Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

43.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

44.     The Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information

identified above in connection with their decision to approve and recommend the Proposed Transaction.

45.    The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

46.    The Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

47.    The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

48.    Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act)**

49.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50.     The Individual Defendants acted as controlling persons of Fincastle within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Fincastle, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

51.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

53.     In addition, as set forth in the Registration Statement sets forth at length and

described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

54.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

56.    Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.    Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.    Directing the Individual Defendants to disseminate an Amendment to the Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.      Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: May 7, 2021                                         Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
1190 Broadway,
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*
